State ex rel. Kickbush vs. Hœflinger.

STATE ex rel. KICKBUSH VS. HŒFLINGER.

RECORD OF NATURALIZATION. (1) *Is a judgment.* (2) *May be made by deputy clerk.*

QUO WARRANTO. (3) *Complaint: averment of relator's eligibility to office.* (4, 5) *Defective record of judgment; circuit court takes judicial notice of its own records.*

JURISDICTION: STATE AND FEDERAL COURTS. (6) *Writ of error to take cause to supreme court of U. S., disallowed.*

1. Under the naturalization laws of the United States, the record of the admission of an alien to citizenship in any court authorized to perform the act is a record of *a judgment* of such court, which imports absolute verity, and cannot be questioned in any collateral proceeding.

2. Where such judgment is rendered in a circuit court of this state, the fact that the record is made up by a *deputy* clerk, and not by the clerk in person, does not affect its validity.

3. In an action to try title to a county office, an averment that the relator, at the time of the election under which he claims, was a legal and qualified elector of the county, and eligible to the office, is sufficient without a further allegation that he was a citizen of the United States.

4. In such an action in a circuit court of this state, the relator, to show that he was a citizen of the United States, produced the original record of his naturalization *in the same court.* *Held*, that the court would take judicial notice of its own records, and it is immaterial whether the word "circuit" appeared in the description of the court in such record, or not.

5. The omission of the word "circuit" before the word "court," in the copy of said record found in the bill of exceptions in such action, as filed in this court, is therefore immaterial; and on that ground appellant's motion for leave to withdraw the bill of exceptions for amendment in that particular, is denied.

State ex rel. Kickbush vs. Hœflinger.

6. An application to the chief justice for the allowance of a writ of error, to take this cause to the supreme court of the United States, disallowed by him for reasons stated.

APPEAL from the Circuit Court for *Marathon* County.

Action to try the relator's title to the office of treasurer of Marathon county, for the term of two years commencing on the first Monday of January, 1873. The complaint contains averments which, if true, show that at the general election in that county in November, 1872, the relator received a majority of all the votes cast for said office by the qualified electors of the county, but that the board of canvassers refused to count as cast for him a considerable number of votes which were so cast in fact, but counted them as "scattering," and wrongfully gave the defendant the certificate of election to said office, as having received a plurality of the votes. It also sets out at length the particular facts in respect to the votes so counted as scattering. It then avers that the relator "was and is a legal and qualified elector of said county, and now is and was eligible to said office at the time of such election." It then contains the necessary averments to show that the relator duly qualified for said office, and made demand therefor upon the defendant (who was his predecessor in the office) on the Tuesday following said first Monday of January, 1873, and that such demand was refused, etc.

The answer alleges that at the time of the general election in 1872, the relator was, and that he still is, an alien, born in Germany of German parents, subjects of the King of Prussia, and that he has not been naturalized as a citizen of the United States. It contains also averments to show that defendant received a majority of the legal votes cast at said election for the office here in dispute; but as no attempt was made to prove these averments, they are here omitted.

The defendant, at the trial, objected to the admission of any evidence under the complaint, because it does not aver that the relator is a citizen of the United States; but the objection was

overruled. Evidence was then introduced for the relator tend-ing to sustain the complaint. The only part of the evidence as to which any error is alleged, is that bearing upon the rela-tor's eligibility to the office in question. He testified in his own behalf that he had been a resident of Marathon county for over thirteen years, and a voter for eleven years. His attorney then put in evidence the book of records of naturalization of said court. The record of the relator's naturalization, as found in the printed case, is as follows:

" United States of America:—Be it remembered, that on this thirteenth day of the month of March, in the year of our Lord one thousand eight hundred and sixty-six, and of the independ-ence of the United States the ninety-first, *Frederick W. Kick-bush*, an alien, being a free white person, appeared before the court of the state of Wisconsin for Marathon county, and ap-plied to the court to be admitted to become a citizen of the United States: and the said *Frederick W. Kickbush* having, more than two years ago, made declaration of his intended ap-plication as aforesaid, in the manner and form prescribed in an act of congress entitled 'An act to establish an uniform rule of naturalization, and to repeal the acts heretofore passed on that subject;' and the court being satisfied by the testimony of William Wilson, citizen of the United States, that the said *Frederick W. Kickbush* has resided within the United States for the continued term of five years last past, and within the state of Wisconsin one year at least; and that during that time he has behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; and the said applicant declaring on oath before the court that he will support the constitution of the United States, and that he doth absolutely and entirely renounce and abjure all allegiance and fidelity to every foreign prince, potentate, state or sovereignty whatsoever, and particularly to William the First, King of Prussia, whereof he was before a subject:

Thereupon the court admitted the said *Frederick W. Kick-bush* to become a citizen of the United States.

J. W. CHUBBUCK, *Clerk.*

By H. MILLER, *Deputy.*"

The defendant objected to this record on the grounds that there never had been any previous application. by the relator declaring his intention to become a citizen, and that the record shows that there was only one witness, and " that it is done by the deputy clerk, and not by the clerk." The objection was overruled. The relator's testimony, both before and after the introduction of this record, tended to show that he never made any application declaring his intention to become a citizen, prior to the date of said record.. His testimony also tended to show that Miller, the deputy clerk, administered the oath, the clerk being present. Defendant then called Mr. Miller, who testified that he was acting as deputy clerk of said court when the relator's application for admission to citizenship was made; that he filled out the blanks in the certificate, and wrote the signature, and thought that he administered the oath; that he did not remember who the witnesses were, but he had made out the record in that particular "according.to the facts as they occurred;" and that the court was in actual session at the time. He was then asked by defendant's counsel, whether the defendant, at the time, produced a certificate of declaration of intention; but the question was ruled out. Defendant then offered to prove by the witness that the plaintiff, at the time mentioned in said record, made no proof of having previously declared his intention to become a citizen; and also to prove that the witness administered the oath to the relator, and made up the record, as deputy clerk. Both offers were overruled.

Verdict for the plaintiff; new trial denied; and defendant appealed from a judgment on the verdict.

*Park & Jones*, for appellant :

1. It is a fundamental principle of all government, that the political power of a state rests in its citizens; and the exercise

State ex rel. Kickbush vs. Hœflinger.

of that power and the franchises of office are limited to them. The complaint was insufficient, therefore, in failing to aver that the relator was a citizen or had declared his intention to become such. 2. The paper evidence admitted to prove the relator's citizenship was incompetent for that purpose: (1.) Because it nowhere shows in what court the pretended act of admission took place. It may have been a police, county or justice's court. By the naturalization laws, state courts having common law jurisdiction, and a seal and clerk, and none others, can naturalize. 1 Brightley's Dig., 34. (2.) Because it shows but one witness to the fact of residence, good character, etc. The naturalization laws use the words "witnesses" and "citizens," in defining the proof required to satisfy the court; and the practice in admitting aliens is to require *two* witnesses; and "the names of such witnesses" must appear of record. Act of March 22, 1816, sec. 2; Act of May 24, 1828. (3.) Because it has no seal of any court to authenticate it as a record of a court. (4.) Because it shows the admission to have been the act of a *deputy* clerk, and not that of the clerk. The naturalization law requires the proceedings to be "recorded by *the clerk* of the court." This law is exclusive in its authority. State courts, in such cases, act *pro tanto* as federal courts, by federal authority, and their inherent or general powers can add nothing to the power conferred by congress. The case is precisely like that of the authority conferred by federal law upon *the clerk of the court* to authenticate judgments and records, under sec. 1, art. IV of the federal constitution; and the deputy clerk cannot act in such cases. *Sampson v. Overton*, 4 Bibb, 409; 24 N. Y., 394; 3 Pa. St., 483–495; 1 Greenl. Ev., §§ 485, 506. (5.) Because it does not purport to give, as a court record, the proceedings, hearing and judicial determination *of the court* on the question (7 Hill, 141, 188), but only the recitals of the deputy clerk. 3. The naturalization laws provide that an alien may be admitted to citizenship *on certain conditions* there specified, "and not otherwise." 1

Bright. Dig., 33, sec. 1. One of these conditions is, that he shall have previously made his declaration of intention to become a citizen. The evidence in this case shows clearly that the relator never made any such declaration. This shows a fraud upon the law. A certificate of naturalization irregularly obtained may be set aside. *Richards v. McDaniel*, 2 Nott & McC., 351. And in this proceeding the fact of naturalization is called in question directly, and not collaterally.

*Silverthorn & Bump* and *E. L. Browne*, for respondent:

1. The averments of the complaint as to the relator's eligibility to the office are sufficient. *State ex rel. Dickinson v. Brunner*, 20 Wis., 62. The denial of citizenship was matter of defense, to be set up in the answer. 2. The proof shows that the relator was about fifteen years of age when he came to the United States; that six or seven years thereafter he made an application to become a citizen, in the circuit court for Marathon county; and that this was his first and only application, etc. The record book of said court, put in evidence, shows that he was admitted to full citizenship by the judgment of the court. The objections taken to the admission of this record were properly overruled. See the naturalization laws as found on pp. 88, 89, 91, of Tay. Stats., §§ 4, 7, 14. Said sections 4 and 7 show that no previous declaration of intention is required in a case like that of the relator, and that the facts as to the residence and character of one applying for citizenship are not required to be shown by the oaths of two witnesses. 7 Hill, 141. It is provided that the declaratory statement of the applicant must be made before " the clerk " of the court. Whether this may be done before the regular deputy clerk, in the clerk's office, in the absence of the clerk himself, is not yet decided by this court. But this question does not arise here. The record here put in evidence was not the declaratory statement, but the *judgment* of the court. The regular deputy clerk performed the duties of the clerk in open court in recording such judgment; and the statute expressly

gives him this power. Tay. Stats., 311, § 98. This judgment precludes any inquiry into the regularity of the preliminary declaration. The record of the court is conclusive as to the recitals therein. *State ex rel. Hopkins v. Olin*, 23 Wis., 309; *McCarthy v. Marsh*, 5 N. Y., 263; *Ritchie v. Putnam*, 13 Wend., 524; *Banks v. Walker*, 3 Barb. Ch., 438; 4 Abb. Dig., 110, note. The word "circuit," omitted in the exhibit attached to the bill of exceptions, appears in the original record. The record shows that the proceedings were had in the circuit court for Marathon county. The evidence of Miller shows that it was during the actual session of the court. Records of judgment are never under the seal of the court. The circuit court would take judicial notice of its own judgment; but there was abundant proof by the officer in whose custody the records are required to be kept, that the record in question was that of said circuit court. 3. The relator having received a majority of the votes, there can be no pretense that the defendant is entitled to the office, even if the relator was ineligible. *State ex rel. Off v. Smith*, 14 Wis., 497; 23 id., 430.

The following opinion was filed at the January term, 1874:

COLE, J. In exhibit "A," annexed to the bill of exceptions, which is a copy of the record of naturalization, the word "circuit" is omitted before the word "court." It is claimed on the part of the plaintiff, that the word was in the original record; and a motion was made to withdraw the bill of exceptions in order to have it inserted in the exhibit. This motion is opposed on the other side, and affidavits have been produced for the purpose of showing that the word "circuit" has been interpolated in the record since it was originally made.

We deny the motion to withdraw the bill of exceptions, because we do not, under the circumstances, deem the proposed amendment material. The word is wholly unnecessary to show that the proceedings of naturalization were had in the circuit court. The book of record was itself offered in evi-

dence, and the circuit court would take notice of its own records.

The first exception in the record is taken to the ruling of the court below on the objection of the defendant to the admission of evidence under the complaint. It is insisted that the complaint was defective in substance, for the reason that it contained no averment that the plaintiff was a citizen of the United States. Upon that point the allegation is, that the " plaintiff was and is a legal and qualified elector of said county, and now is and was eligible to said office at the time of said election." This is a sufficient allegation of legal qualification for the office of county treasurer.

The other exceptions all relate to the competency and sufficiency of the evidence offered to show that the plaintiff had been naturalized. For the purpose of establishing that fact, the book of record of naturalization was produced, which showed that the plaintiff was admitted by the court in which this action was pending, to become a citizen of the United States, on the 13th day of March, 1866. This record of the court of the plaintiff's naturalization was conclusive upon the question in this collateral proceeding. It was the record of a judgment, and imports absolute verity. The law upon this subject is so completely settled by the decision of the supreme court of the United States in *Spratt v. Spratt*, 4 Peters, 393, that we need only make an extract from the opinion of C. J. MARSHALL, in that case, to show that the rulings of the court below were correct: " The various acts upon the subject," says the chief justice, " submit the decision on the right of aliens to admission as citizens to courts of record. They are to receive testimony, to compare it with the law, and to judge on both law and fact. This judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form, to close all inquiry ; and, like every other judgment, to be complete evidence of its own validity." (Pp. 407–8.) This decision is followed by the court of appeals of New York in

State ex rel. Kickbush vs. Hœflinger.

*McCarthy v. Marsh*, 5 N. Y., 263, as a correct exposition of the law, and as a binding authority upon the state courts on the question as to the conclusive effect of the record of naturalization. In this case, it will be remembered, the record produced was the record of the court itself where the action was tried and determined. The record is in due form.

It is said that the record was made by a deputy clerk, and not by the clerk himself. The statute authorizes the clerk to appoint a deputy, who, in his absence, shall perform his duties. R. S., ch. 13, sec. 68. But the record of admission shows that the proceedings were in open court, and therefore what was done in the matter was done by the court itself. The judgment of admission was the judicial act of the court, and was conclusive evidence of the facts therein recited.

These remarks dispose of all the questions we deem it necessary to notice.

*By the Court.* — The judgment of the circuit court is affirmed.

A rehearing was denied at the June term, 1874.

On the 25th of July, 1874, the counsel for the appellant in the above named action applied to Mr. Chief Justice RYAN to allow a writ of error to the supreme court of the United States. The chief justice returned the writ of error, not allowed, with this memorandum:

In the case in which the petitioner prays allowance of a writ of error to the supreme court of the United States, this court held that the relator was duly elected and entitled to the office of county treasurer of Marathon county in this state. In so holding, the court passed upon the point that the record of the circuit court of Marathon county of the naturalization of the relator was, in the case, conclusive evidence of it. No construction of the naturalization laws of the United States was rendered or given. And what was decided went exclusively to the right of the relator; the defendant setting up no right in himself, but only denying the right of the relator.

I have consulted my brethren, and they agree with me that I should not allow the writ of error:

1st. Because no construction was given to any act of congress, but effect was only given to the record of the state court.

2d. Because, if this court should be considered as having given such construction, no right of the defendant is included in such construction; and

3d. Because, this being a question of a state office and a state law, the federal courts have no original jurisdiction of it, by original proceeding or by writ of error.

For these reasons, I decline to allow the writ of error.